**Michael A. HADAD, Plaintiff,**

**v.**

**Jerry LEWIS et al., Defendants.**

**Civ. A. No. 4–70210.**

United States District Court,
E. D. Michigan, S. D.

Aug. 23, 1974.

Robert Craig Munson, Dearborn, Mich., for plaintiff.

Paul R. Grant, Detroit, Mich., for defendant Jerry Lewis.

Alfred A. Rosenberg, Brooklyn, N. Y., for defendant, Network Cinema Corp.

A. D. Ruegsegger, Detroit, Mich., for defendant Stephen J. Scheffer.

Giles & Conley, Birmingham, Mich., for defendant Jack J. Rose.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is an action alleging fraud against the plaintiff, Michael A. Hadad, a citizen of the State of Michigan, by the defendants, Network Cinema Corporation, a foreign corporation and several nonresident individuals. The plaintiff alleges that this Court has jurisdiction by reason of the diversity of citizenship between himself and the defendants under 28 U.S.C. § 1332.

In the motions now before the Court, two of the individual defendants, Jerry Lewis, a resident of California, and Jack J. Rose, a resident of New Jersey, have moved to have the action dismissed against them. Affidavits and briefs were filed, and the Court heard arguments on the motions on July 29, 1974. For the reasons stated herein, the Court denies the motions of the defendants in all respects.

I

The facts in this action, as alleged by Mr. Hadad, are simple. On or about September 26, 1972, and for some time prior to that, the defendant corporation, Network Cinema, conducted an extensive nationwide advertising campaign aimed at inducing persons throughout the country to invest in franchises and area directorships of Network Cinema.[1] The

---

1. The business of the area directors, according to the franchise agreement executed between the plaintiff and defendants was *inter alia*, "Advertising for, negotiating with and

plaintiff, at some time around September 26, 1972, examined some of these advertisements and subsequently requested more information from Network Cinema.

As a result of the plaintiff's initiative, materials describing the investment opportunities with the defendants were mailed to him, and shortly thereafter he forwarded to Network Cinema a check for $7,500 as part consideration for a franchise theatre which was to be located in Jacksonville, Florida. A franchise agreement was subsequently executed on behalf of Network Cinema by Stephen J. Scheffer, the corporation's Vice President and Treasurer.[2]

In late January, 1973, before Mr. Hadad was able to begin operation of the Jacksonville theatre, Don Fortini, an agent of Network Cinema, agreed to sell to him an area directorship in lieu of the franchise which he had originally sought to buy. The cost of this directorship was $50,000 with the $7,500 down payment on the theatre franchise credited against that amount.[3] The balance of $42,500 was subsequently paid by Mr. Hadad to Network Cinema in two payments of $25,000 and $17,500. The plaintiff shortly after the last payment received an Area Director Franchise Agreement which had been executed on behalf of Network Cinema by the

defendant Jack Rose, the corporation's Executive Vice President. The agreement was consummated in March, 1973.

The plaintiff's cause of action is based on his allegation that at all times during which he was engaged in negotiations with Network Cinema, contrary to the representations, actions and conduct of the defendants, Network Cinema was either insolvent or on the verge of insolvency.

## II

◼◼◼ The defendants Lewis and Rose allege, as their first ground for dismissal of this action,[4] that this Court lacks personal jurisdiction over them. Both the defendants and the plaintiff agree that if the Court has jurisdiction, it is by virtue of the Michigan long-arm statute, M.C.L.A. § 600.705(2).[5] That statute states that:

"The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction . . . to enable (the) courts to render personal judgments against such individual or his representative arising out of the act or acts which create any of the following relationships:

\* \* \* \* \* \*

(2) The doing or causing any act to be done, or consequences to occur, in

---

selling franchises to qualified persons . . . to conduct and operate a motion picture theatre business under the trade name 'Jerry Lewis Cinema'," within the area covered by the directorship. ¶ 6 of the "Area Director Franchise Agreement".

2. Mr. Scheffer was originally a defendant in this action, but was dismissed on motion of his attorney when it became apparent that the plaintiff could not develop facts sufficient to satisfy the $10,000 jurisdictional amount.

3. The plaintiff also admits that he paid to Mr. Fortini an additional sum of $5,000, allegedly at the insistence of Mr. Fortini, and apparently for the purpose of obtaining favorable action on Mr. Hadad's request to replace his franchise agreement with one for an area directorship.

4. The defendants in this action moved separately to have the complaint dismissed, but

the grounds in each motion were the same or nearly enough the same to allow the Court to decide them together. The defendant Rose, in addition, moved to have the action dismissed for failure to state a claim upon which relief can be granted. Since the defendant also has moved to dismiss the action for failure to allege with sufficient particularity the circumstances constituting fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure, the Court will consider both these attacks on the complaint as merged.

5. It is well established that in a diversity action, jurisdiction is determined on the basis of the law of the state in which the federal court sits. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

the state resulting in an action for tort.

The parties do not contest, and the Court does not believe that it is open to question, that fraud is a tort within the meaning of the Michigan statute. Cf. Nationwide Motorist Ass'n of Michigan, Inc. v. Nationwide Motorist Ass'n, Inc., 244 F.Supp. 490 (W.D.Mich.1955). The only issue before the Court, therefore, is whether the defendants did or caused any act to be done, or consequences to occur, in Michigan which resulted in this action for fraud.[6]

■■ In an action for fraud, the elements of the case which the plaintiff must prove are the following:

(1) That there was a material representation by the defendants;[7]

(2) that the representation was false;

(3) that it was made with the knowledge of its falsity, without any knowledge of its truth as a positive assertion, or recklessly;

(4) that it was made with the intention that the plaintiff act upon it; and

(5) that the plaintiff did act upon it with the consequential injury upon which he is suing.

Nationwide Motorist Ass'n of Michigan v. Nationwide Motorist Ass'n Inc., supra; McIntyre v. Lyon, 325 Mich. 167, 37 N.W.2d 903 (1949).

In determining whether the defendants in this action may have caused any consequences within the state of Michigan upon which an action for fraud may be based, the Court proceeds from the principle stated in *Nationwide Motorist Ass'n of Michigan,* supra, that the "only acts which a defendant is capable of are the actual false representations" made

by the defendants to the [plaintiff]. 244 F.Supp., at 493. We must turn then to the representations made by the defendants.

■ Mr. Rose in his brief in support of the motion to dismiss, on the issue of his actions in this case, states: "All the Complaint can be said to aver against Rose is that he was an officer of NCC (Network Cinema Corporation), the defendant corporation, who executed an agreement with plaintiff on NCC's behalf in his capacity as its Executive Vice President, and nothing more." Memorandum in Support of defendant Jack Rose's Motion to Dismiss, at 3–4. Bearing in mind that this motion is only to determine the Court's jurisdiction, the Court is of the opinion that the execution of the agreement by Mr. Rose was a sufficient representation to the plaintiff that Network Cinema was solvent, such that if the defendant, as Mr. Hadad alleges, was aware at the time that the corporation was insolvent or was about to become so, a case of fraud could be proved against him. The representation in this case was Mr. Rose's execution of the agreement, an act that completed the series of acts which ultimately resulted in the plaintiff parting with his money. There is no need to examine the plaintiffs' proofs at this point, it is sufficient that he has alleged facts sufficient for this Court to conclude that Mr. Rose did an act or caused a consequence in Michigan which resulted in this action.

■ Likewise, in the case of the defendant Jerry Lewis, the Court is of the opinion that his actions may be shown to have caused the consequences herein sued upon. Mr. Lewis did not personally make any representations to the

---

6. Although Mr. Rose raised the issue of the defendant's physical presence within Michigan, it is well established that this is not a requirement for exercising long-arm jurisdiction over a defendant. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Southern Machine Co., v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

7. The law of the state of Michigan is that "(a) representation, within the meaning of the law of fraud, is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of facts conducive to action." Sullivan v. Ulrich, 326 Mich. 218, 228, 40 N. W.2d 126, 131 (1949) (citation omitted).

plaintiff either in Michigan or in any other state. The plaintiff's contention with respect to this defendant, however, is that representations were made in the form of advertisements published by the defendant corporation, and that Mr. Lewis authorized other defendants to use his name to procure purchasers for franchises. In this regard, it is significant to note that the agreement which the plaintiff executed with Network Cinema contained the following clause:

> "5. QUALITY CONTROL, UNIFORMITY AND NAME AREA DIRECTOR is fully aware of and acknowledges the high reputation and public standing of the COMPANY and Jerry Lewis and hereby covenants and warrants to conduct his Business and supervise the business of Exhibitors within his territory in accordance with the highest level and standards of quality . . . . in connection with the use of the name and image of Jerry Lewis . . ." Area Director Franchise Agreement, ¶ 5.

In deciding whether the defendant Lewis is amenable to the jurisdiction of this Court, then, these facts are of a major importance. The clause quoted above makes it abundantly clear that the reputation and name of Jerry Lewis were heavily relied upon by Network Cinema to sell its franchises. Whether that clause was boilerplate verbiage, or whether it represented the actual intention of Mr. Lewis is immaterial. The fact, as this Court views it, is that the plaintiff has alleged that it was the reputation of Jerry Lewis, as expressed in the advertisements by Network Cinema, which induced him to purchase the franchise. Since Mr. Lewis was a director of Network Cinema, it can be assumed that all of this was done with his personal knowledge and approval. See, Mason v. Vogue Knitting, 361 Mich. 481, 488, 105 N.W.2d 412 (1960).

■ Since this Court has determined that both defendants, based on the pleadings, could be found to have caused consequences in Michigan which resulted in this action for fraud, we turn to the question of whether there were sufficient contacts between the defendants and Michigan to make it reasonable for this Court to exercise jurisdiction under M.C.L.A. § 600.705(2). The Court notes that Michigan's long-arm statute is interpreted by the Michigan courts to reach the full limits allowed by the United States Constitution. Sifers v. Horen, 385 Mich. 195, 188 N.W.2d 623 (1971).

The particular facts of this case raise issues which have not been addressed directly before by the courts in this state. Nevertheless, the approach by this Court as well as other Federal courts, is to decide questions of long-arm jurisdiction on a case by case basis. In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court said:

> " . . . (D)ue process requires only that in order to subject a defendant to a judgment in personam, if he is not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

> \* \* \* \* \* \*

> (The demands of due process) "may be met by such contacts . . . with the state of the forum as make it reasonable, in the context of our federal system of government, to require the (defendant) to defend the particular suit which is brought there." 326 U.S., at 316–317, 66 S.Ct. at 158 (Citations omitted).

■ What is reasonable in any given case, however, is not subject to clear definition; the Court, instead, must rely on guidelines developed over a period of time during which general principles were applied to specific situations. The general principles which have developed within the Sixth Circuit may be characterized in this manner:

(1) The defendant must have purposefully availed himself of the privileges of acting in the forum state or causing a consequence here;

(2) the cause of action must arise from the defendant's activities here, or from the consequences caused by the defendant here; and

(3) the acts of the defendant or consequences caused by him or her must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

The issue which the Court faces here is whether the acts, conduct or consequences caused by the defendants had a substantial enough connection with Michigan to make the exercise of jurisdiction over them reasonable.

In this regard, it is useful to look at an early Supreme Court case for guidance. In Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158 (1933), the plaintiff, a citizen of New York, brought an action in New Jersey against a resident automobile owner of that state to enforce a liability created under a New York statute. The statute purported to make the owner of a motor vehicle liable for injuries caused by a driver to whom the owner had given permission to operate the vehicle. The vehicle involved in the action was registered in New Jersey, was loaned in New Jersey, and was returned to the owner in New Jersey. The accident, however, occurred in New York. The defendant-owner argued that it would offend his due process rights under the Constitution if the New Jersey court applied the New York statute to hold him liable for injuries in a situation where New Jersey imposed no liability. In holding that the statute could be applied consonantly with the due process clause of the Fourteenth Amendment, the Supreme Court said:

"A person who sets in motion in one state the means by which injury is inflicted in another may, consistently with the due process clause, be made liable for that injury whether the means employed be a responsible agent or an irresponsible instrument . . . . " 289 U.S., at 258, 53 S. Ct., at 601.

In the case now before the Court, the defendants are alleged to have had knowledge at the time that Mr. Fortini was conducting extensive negotiations with the plaintiff that Network Cinema was either insolvent or nearly so, and in any case, that bankruptcy was imminent. The complaint also alleges that Network Cinema had previously solicited business in Michigan, and that shortly before he signed the original franchise agreement, Mr. Hadad either inspected or saw one of the Jerry Lewis Cinema Theatres under construction here in Michigan. This is mentioned only to indicate that the advertisement which Mr. Hadad alleges that he relied on in purchasing the area directorship may have also resulted in other residents of Michigan purchasing franchises.

▮▮▮▮ The contacts which the defendant must have with the forum are not measured quantitatively, but rather are analyzed qualitatively to determine whether a tort committed in this state was in some way the result of those contacts. The Court does not, therefore, rely upon the activities of Mr. Fortini in deciding that it would be reasonable to hold Mr. Lewis and Mr. Rose amenable to this Court's jurisdiction. Rather, in view of the particular tort, the Court believes that a single material representation, which was relied upon, may be sufficient contact with Michigan to allow courts here to exercise jurisdiction over the defendant under M.C.L.A. § 600.-705(2).[8]

---

8. The Court does not suggest, however, that there was only one contact involved in this case. Mr. Hadad alleges in fact that Mr. Rose, either personally or through others, make promises to him regarding the protection of his money while the corporation sought new funds to recover financially. This promise, he alleges, was not honored.

The plaintiff also alleges that Mr. Lewis, on occasions, was personally represented at meetings in January of 1973 when a decision was made that the corporation would not close any more deals for area directorships and theatre franchises. This took place prior to the time that Mr. Hadad completed negotiations for the area directorship which

It is reasonable to believe that the defendant Lewis should have known that the use of his name by Network Cinema and agents of that corporation would result in residents of Michigan relying thereon to purchase franchise with the defendant corporation, in fact, this was the very purpose of such advertisements. Since Mr. Lewis was also a director of Network Cinema, it is also reasonable to believe that he may have known or should have known what the financial condition of the corporation was at any given time. It is therefore reasonable to hold that Mr. Lewis could have foreseen an individual being injured if he purchased a franchise in reliance on his reputation and name if in fact the corporation was on the verge of bankruptcy at the time of the purchase. As the Sixth Circuit said in Nationwide Motorist Ass'n of Michigan v. Freeman, 405 F.2d 699 (6th Cir. 1969):

".  .  .  Since the representations made in . . . [Michigan] were material, were plainly designed to be relied upon in occasioning plaintiffs' formation of a company to do business in Michigan under franchise from defendant NMA and the plaintiff alleged both falsity and reliance, we believe there was sufficient activity within Michigan to uphold service and limited personal jurisdiction under the Michigan statute." 405 F.2d, at 700.

The defendant Rose, who the plaintiff alleges was brought into the corporation because of its financial troubles, is also before this Court under reasonable circumstances. By executing the agreement on behalf of the defendant corporation, he represented to the plaintiff that the corporation was solvent and a going concern. The plaintiff contends, however, that at the time he signed the agreement, he was aware of the impending bankruptcy. Because of his position with the corporation, and because he is alleged to have been particularly aware of Network Cinema's financial troubles, it is in the opinion of this Court, reasonable to hold him amenable to jurisdiction here for an injury which he was in a unique position to have foreseen. See, Southern Machine Company v. Mohasco Industries, 401 F. 2d 374, 383 n. 24 (6th Cir. 1968).

### III

The defendants also contend that the complaint fails to allege with sufficient particularly the circumstances constituting acts of fraud by them as required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b), however, is intended to assure the defendant that upon a reading of the complaint, he will be apprised of the fraudulent acts which are charged. The Court believes that the complaint in this action serves that purpose. Cf. Hirshhorn v. Mine Safety Appliances, 54 F.Supp. 588, 591 (W.D.Pa.1944). In any case, a far less drastic form of relief is available at this time to the defendants in Rule 12(e) which allows them to request a more definite statement of the pleadings. See, Perrott v. United States Banking Corp., 53 F.Supp. 953 (D.C. Del.1944).

Finally, the defendants allege that Mr. Hadad is enjoined from bringing this action by an order of a Bankruptcy Judge in a proceeding under Chapter XI of the Bankruptcy Act in a District Court in Delaware. It is elementary in our judicial system, however, that an individual cannot be personally bound by processes in a court which has no jurisdiction over him. There is no allegation that the plaintiff was a party to the bankruptcy action in Delaware, in fact, no debt has been established against the defendant corporation. All that is alleged here is that the plaintiff has become aware of the proceedings in Delaware. See, Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878); In re Greenberg, 50 F.Supp. 919 (E.D.N.Y. 1943); In re Isaac Harris Co., 173 F. 735 (E.D.N.Y.1909).

is subject to this suit. While these meetings were not in Michigan, they do support other allegations involving the defendants' awareness of the financial troubles of Network Cinema.

In In re Ohio Copper Mining Co., 241 F. 711 (S.D.N.Y.1917), addressing the issue of the equity powers of a bankruptcy court, the Court said:

"A court of bankruptcy may therefore accomplish by its order a result similar to that which could be accomplished by a court of equity under similar circumstances, *provided, of course, the person against whom the decree or order is directed was a party to the proceeding and has been served in personam.*" 241 F., at 713. (Emphasis added).

That this is a proper construction of the Bankruptcy Court's jurisdiction is supported by the language of 11 U.S.C. § 11(20) which speaks of the ancillary jurisdiction of that court "within their respective territorial limits".

It is therefore ordered that the motions to dismiss of the defendants be, and the same hereby are, denied in all respects.