K MART CORPORATION, a Michigan corporation, Plaintiff,

v.

KNITJOY MANUFACTURING, INC., a foreign corporation; Leo F. Owyong and Daisy D. Owyong, individuals, Defendants.

Civ. No. 80–74586.

United States District Court, E. D. Michigan, S. D.

June 21, 1982.

James C. Tuttle, Troy, Mich., Robert W. Steele, Robert E. Hebda, Edward C. LaRose, Howrey & Simon, Washington, D. C., for plaintiff.

Roger K. Timm, Nancy C. Edmunds, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendants.

## SUPPLEMENTAL OPINION AND ORDER ON JURISDICTION

COHN, District Judge.

### I.

#### A.

This is an action by K Mart Corporation (K Mart) for breach of express and implied warranties and fraudulent misrepresentation against Knitjoy Manufacturing, Inc. (Knitjoy) and its principals, Leo and Daisy Owyong, in the sale of clothing from Knitjoy to K Mart which K Mart alleges failed to comply with the Flammable Fabrics Act, 15 U.S.C. § 1191 *et seq* (the Act). Knitjoy, a Philippines corporation, and the Owyongs, residents of the Philippines, have moved to dismiss the complaint for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2).

Suit was begun on December 30, 1980; the motion to dismiss was filed on April 30, 1981 and K Mart responded on May 27, 1981. After supplemental briefs were filed by the parties, the Court heard argument in chambers on June 11, 1981, at which time it indicated it would deny Knitjoy's motion.

K Mart asked for additional discovery as to the question of jurisdiction over the Owyongs.

On December 21, 1981 the Court entered an Opinion and Order on Jurisdiction formally denying Knitjoy's motion to dismiss and setting a briefing schedule on the Owyongs' motion in light of discovery conducted in the Far East in October 1981. 534 F.Supp. 153 (E.D.Mich.1981). K Mart filed a supplemental brief on February 23, 1982, accompanied by a motion for a preliminary injunction to restrain defendants from removing assets from the United States. Knitjoy and the Owyongs responded on March 22, 1982. The parties filed reply briefs on April 22 and May 7, 1982.

The Court heard oral argument on May 11, 1982. In part at the suggestion of the Court, the parties filed post-hearing briefs. K Mart has also directed two letters to the Court to which defendants have responded. Finally, K Mart has filed a motion for leave to amend its complaint so it could make more specific its allegations against the Owyongs.[1]

#### B.

The Court concludes:

(1) The Owyongs' motion to dismiss is denied. While the Court finds the facts presented by K Mart insufficient to pierce the corporate veil under either Michigan or Philippine law,[2] the Owyongs are subject to personal jurisdiction in Michigan under M.S.A. § 27A.705(2) [M.C.L.A. § 600.-705(2)] because of K Mart's allegations that they were parties to a fraud which caused consequences giving rise to an action for tort to occur in Michigan;

---

1. In a letter to the Court on April 21, 1982, counsel for K Mart expressed concern that "what should be a straightforward breach-of-contract case threatens to be transformed into unnecessarily protracted litigation". The fact that the parties have filed ten lengthy and often repetitious briefs, numerous appendices and three substantive letters on the issue of jurisdiction alone, when the issues are not overly complicated, suggests the concern is overdue.

2. The parties have spent a good deal of time and effort arguing whether Michigan or Philippine corporation law applies to the issue of

piercing the corporate veil, K Mart arguing for the former and the Owyongs arguing for the latter. As the Court noted at oral argument, there appears to be no substantive difference between the two and it is therefore unnecessary to resolve this large tempest in a small teapot. *Compare* Annotation, Piercing the Veil of Corporate Fiction, 22 *Supreme Court Reports Annotated* [Philippine] 1159, 1160 (1968) *with Soloman v. Western Hills Development Co.*, 110 Mich.App. 257, 263, 312 N.W.2d 428 (1981).

(2) K Mart's motion for a preliminary injunction restraining Knitjoy and the Owyongs from removing assets from the United States is denied;

(3) K Mart's motion for leave to amend its complaint is granted.

## II.

■ The facts underlying the formation of the contract between K Mart and Knitjoy are set forth in the Court's December 21, 1981 opinion. Additional facts are included as necessary in this opinion as part of the Court's analysis of the legal contentions of the parties. The burden of proving facts sufficient to support the exercise of personal jurisdiction over the Owyongs rests with K Mart. *McNutt v. GMAC*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). However, K Mart needed only demonstrate a prima facie case of the existence of jurisdictional facts and the factual allegations in its pleadings are assumed to be true; K Mart need not demonstrate the validity of its claim on the merits. *O'Hare Int'l. Bank v. Hampton*, 437 F.2d 1173, 1176–77 and n.2 (7th Cir. 1971); *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2nd Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966).

K Mart relies on two legal theories for the exercise of personal jurisdiction over the Owyongs. First, K Mart argues that Knitjoy is the "alter ego" of the Owyongs and the Court should pierce the corporate veil of Knitjoy, treating its acts as acts of the Owyongs; under this theory the Owyongs can be deemed to have "transacted business" in Michigan, M.S.A. § 27A.705(1) [M.C.L.A. § 600.705(1)], through the very acts of Knitjoy which the Court has already determined are sufficient for the exercise of personal jurisdiction over the corporation. Second, K Mart argues the Owyongs are subject to jurisdiction in Michigan by

virtue of their having executed fraudulent guarantees of compliance with the Act as agents of Knitjoy under the Michigan common law principle that agents are individually liable for their torts; under this theory the Owyongs can be deemed to have caused consequences to occur in Michigan resulting in an action for tort, M.S.A. § 27A.705(2) [M.C.L.A. § 600.705(2)].[3]

### A.

#### 1.

The record contains the following key facts relevant to the issue of whether Knitjoy is the "alter ego" of the Owyongs:

(1) Knitjoy is constituted and operated as a "family business".

Specifically, (a) the Owyongs own 97% of Knitjoy stock; (b) Leo Owyong serves as president and general manager while Daisy Owyong serves as vice-president of Knitjoy; (c) five members of the Owyong family (including Leo and Daisy Owyong) were incorporators of Knitjoy; (d) the Knitjoy board of directors rarely fails to ratify actions taken by the Owyongs, although two of its members are officers of the Development Bank of the Philippines due to its large outstanding loans to Knitjoy; and (e) Leo and Daisy Owyong control the day-to-day operations of Knitjoy, and although the board of directors meets regularly, it confines itself to minor matters and ratification of the actions of the Owyongs.

(2) Knitjoy and the Owyongs on occasion intermingle corporate and personal funds.

Specifically, (a) Leo and Daisy Owyong have on several occasions advanced or loaned money from their personal accounts to Knitjoy; (b) Leo Owyong paid a commission fee of $5,200.20 on a letter of credit for the benefit of Knitjoy with the National Bank of Detroit in July 1981 by a check

---

**3.** Both theories have been advanced by K Mart since its initial response to the motions to dismiss. Even though the Court's December 21, 1981 opinion indicated the Owyongs appeared at all times to be acting in their corporate rather than individual capacities, 534 F.Supp. at 158 and n.7, 9, the Court did not intend to limit K Mart's argument to the theory of piercing the corporate veil. While nothing in the current record indicates the Owyongs ever acted as individuals, K Mart's "agency" theory does not require that they have acted as individuals for the exercise of personal jurisdiction over them.

drawn on his personal bank account in Manufacturers Hanover Trust Company in New York;[4] and (c) Leo Owyong personally invested $25,000 for a 25% interest in Drater Trading, Inc., a New York corporation begun by a friend of Leo Owyong in anticipation (up to now unrealized) that Drater would increase Knitjoy's export business to the United States.

(3) Knitjoy requires financial support from the Owyongs to secure credit. Specifically, (a) all creditors with outstanding loans to Knitjoy have required personal guarantees of the Owyongs; and (b) Daisy Owyong's brother, Dewey Dee, has guaranteed certain Knitjoy letters of credit and was responsible for a certain joint venture involving Knitjoy. While Dewey Dee has recently been accused of financial misdealings in the Philippines, there is nothing to suggest these activities are in any way related to Knitjoy or that Dewey Dee has any current direct financial interest in Knitjoy.

### 2.

■ Under Michigan or Philippine law, the corporate veil will not be pierced unless "the notion of a corporation as a legal entity is used to defeat public convenience, justify a wrong, protect fraud or defend crime .... The fiction of a corporate entity different from the stockholders themselves was introduced for convenience and to serve the ends of justice, but when it is invoked to subvert the ends of justice it should be and is disregarded by the courts." *Soloman v. Western Hills Development Co.*, 110 Mich.App. 257, 263, 312 N.W.2d 428 (1981); *see* note 2, *supra*. Disregard of corporate formalities alone is not sufficient to justify piercing the veil; in addition, fraud, illegality or injustice must be shown. *Soloman, supra,* 110 Mich.App. at 263, 312 N.W.2d 428.

■ K Mart's factual exposition is simply insufficient to justify piercing the Knitjoy corporate veil. As noted by the Court at oral argument and argued by Knitjoy, there is no evidence that the Owyongs have abused Knitjoy's corporate form in any way for personal gain. K Mart has not shown that it or anyone else has been defrauded or misled by the fact that Knitjoy operates as a corporation with the Owyongs as its principals. The facts K Mart has elicited via discovery demonstrate that Knitjoy is a closely held corporation controlled in large part by the Owyongs, who have contributed to its financial health on several occasions. Nothing in the record suggests the Owyongs have "bled" Knitjoy to defeat creditors, treated Knitjoy as their own "personal" asset, disregarded corporate formalities or done anything other than operate a closely held corporation in a manner commensurate with their ownership stake in that corporate entity.

In fact, it appears the only theory upon which the Court could pierce Knitjoy's corporate form on the record before it would be to hold that every closely held corporation is the "alter ego" of its principals. As noted above, that is not the law of either Michigan or the Philippines.

### B.

### 1.

■ K Mart's second theory for the exercise of personal jurisdiction over the Owyongs, i.e., that as agents of Knitjoy they fraudulently executed written guarantees of compliance with the Act for which they may be held personally liable, is supported by the following facts in the record:

(1) Leo and Daisy Owyong signed an agreement to the terms of K Mart import orders on January 24, 1979, which included a guarantee that all clothing manufactured for those orders would comply with the Act;

(2) Leo Owyong signed a guarantee on January 24, 1979 that Knitjoy invoices would each bear a guarantee that "reasonable and representative tests" showed that clothing delivered under that invoice conformed to the requirements of the Act;

---

**4.** This letter of credit is not associated with the K Mart/Knitjoy transaction in dispute here.

(3) Knitjoy invoices show that on April 24, May 18 and June 19, 1979, Leo Owyong signed a "General Form of Guaranty" printed on each invoice in accordance with his guarantee of January 24, 1979; and

(4) When the various guarantees were signed by Leo and Daisy Owyong, both knew no tests would be or had been performed on goods delivered by Knitjoy to K Mart. *See* Deposition of Leo Owyong, 10/23/81 at 304–06; Deposition of Daisy Owyong, 10/21/81 at 201–02.[5]

2.

It is clear that under Michigan law an agent may be held liable individually for torts he commits even on behalf of his principal. *A&M Records, Inc. v. M.V.C. Distributing Corp.*, 574 F.2d 312, 314–15 (6th Cir. 1978) (applying Michigan law); *Warren Tool Co. v. Stephenson*, 11 Mich. App. 274, 161 N.W.2d 133 (1968). *See Seestedt v. Jones*, 230 Mich. 341, 348, 202 N.W.2d 984 (1925); *Weber v. Weber*, 47 Mich. 569, 571, 11 N.W. 389 (1882). Thus the fact that the Owyongs signed the guarantees in their corporate capacities as officers of Knitjoy rather than as individuals does not shield them from liability if their representations were fraudulent, even though as individuals they were not parties to the K Mart/Knitjoy contract. *Zaino v. North Woodward Construction Co.*, 355 Mich. 425, 429, 95 N.W.2d 33 (1959).[6]

The question now before the Court, however, is one of jurisdiction: have the Owyongs caused consequences to occur in Michigan resulting in an action for fraud, M.S.A. § 27A.705(2) [M.C.L.A. § 600.-705(2)], under circumstances that the exercise of jurisdiction over them here comports with the "traditional notions of fair play and substantial justice" demanded by due process, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

In *Hadad v. Lewis*, 382 F.Supp. 1365 (E.D.Mich.1974), the court denied a motion to dismiss a fraud action for lack of personal jurisdiction in circumstances similar to those presented here. Plaintiff, a citizen of Michigan, was induced by two non-Michigan residents to enter into a franchise agreement to operate a movie theater in Florida. Neither of the non-Michigan resident defendants had been in Michigan to negotiate the deal. The franchisor went bankrupt before plaintiff began operations and his fraud claim was based on defendants' implied and express representations concerning the solvency of the franchisor, which plaintiff alleged were made when known to be false.

The court upheld jurisdiction under M.S.A. § 27A.705(2) [M.C.L.A. § 600.-705(2)]—causing consequences to occur in Michigan resulting in an action for tort—and specifically held that the exercise of jurisdiction complied with due process requirements. The court stated:

"The contacts which the defendant must have with the forum are not measured quantitatively, but rather are analyzed qualitatively to determine whether a tort committed in this state was in some way the result of those contacts. The Court

---

5. Knitjoy and the Owyongs argue these representations should be excused because Andrew Tam, a K Mart employee in Hong Kong who negotiated the K Mart/Knitjoy contract, told them the guarantees were a mere formality. This argument is more properly directed to the merits of K Mart's claim rather than the jurisdictional issue.

6. At the Court's suggestion, K Mart has moved for leave to file an amended complaint more particularly detailing the allegedly fraudulent conduct of Knitjoy and the Owyongs. K Mart's motion for leave to file the amended complaint will be granted. However, the amended complaint appears to state claims for breach of contract and fraudulent misrepresentation against both Knitjoy and the Owyongs. In light of the Court's ruling in the December 21, 1981 opinion that the Owyongs signed all relevant documents in their capacities as officers of Knitjoy rather than as individuals, the Owyongs were not parties to the K Mart/Knitjoy contract and cannot be liable for its breach. Accordingly, the amended complaint will be construed to claim breach of contract only against Knitjoy and fraudulent misrepresentation against both Knitjoy and the Owyongs.

does not, therefore, rely upon the activities of [the plaintiff] in deciding that it would be reasonable to hold [the defendants] amenable to the Court's jurisdiction. Rather, in view of the particular tort, the Court believes that a single material representation, which was relied upon, may be sufficient contact with Michigan to allow courts here to exercise jurisdiction over the defendant under [M.S.A. § 27A.705(2); M.C.L.A. § 600.705(2)]."

382 F.Supp. at 1371 (footnote omitted).

In *Centurian Industries, Inc. v. Admiral Overseas Corp.*, No. 79 C 2304 (N.D.Ill. April 13, 1981), the court, *inter alia*, upheld the exercise of personal jurisdiction over a corporate officer (McCartin) whose sole contact with the forum state was sending telexes and letters in his corporate capacity to plaintiff's offices in Illinois. McCartin's activities outside the forum state, including sending telexes to one of plaintiff's customers falsely describing its ability to obtain credit, gave rise to an action for tort in Illinois. Taken together, the court held, McCartin's activities both inside and outside of Illinois were sufficient for the exercise of personal jurisdiction over him there to comport with due process.

In this case, the Owyongs' signatures on the K Mart import order agreement and on Knitjoy invoices, in which they guaranteed that clothing sold to K Mart would be or had been tested for compliance with the Act, were representations similar to the representations concerning solvency by the defendants in *Hadad* and the representations by McCartin in *Centurian*.[7] Without reaching the merits of K Mart's fraud allegations, it is claimed that when the Owyongs signed the agreement to the import orders and the Knitjoy invoices they knew no testing had been done and the clothing was not in compliance with the Act. Those representations were communicated to K Mart personnel in Michigan. Accordingly, the Court concludes under the authority of *Hadad* and *Centurian* that it has the power to exercise personal jurisdiction over the Owyongs under M.S.A. § 27A.705(2) [M.C.L.A. § 600.705(2)] and that the exercise of that power under the circumstances here comports with due process. Thus the Owyongs' motion to dismiss will be denied.

### III.

■ K Mart's motion for a preliminary injunction restraining Knitjoy and the Owyongs from removing assets from the United States is designed to assist K Mart in executing upon a judgment it expects to obtain in this case. The basis of K Mart's request is that Leo Owyong, while visiting the United States in September and October 1981, withdrew virtually the entire $10,000 balance in a personal account with Manufacturers Hanover Trust Company in New York and that the existence of that account was not disclosed in prior answers to K Mart interrogatories requesting identification of assets. K Mart also notes that other assets of Knitjoy and the Owyongs, namely the previously mentioned $700,000 letter of credit for the account of Knitjoy at the National Bank of Detroit and Leo Owyong's

---

7. In its post-hearing brief, the Owyongs argue that any representations made by them were future promises rather than statements relating to past or existing facts, which they say under Michigan law cannot be the basis for fraud.

This argument lacks merit for two reasons. First, the Owyongs signed the guarantees after production of the clothing had begun and signed guarantees on invoices for the clothing to be shipped. Coupled with the Owyongs' deposition testimony that tests were not conducted and that they did not intend to be bound by the written guarantee, noted above, there is a sufficient factual basis to conclude the representations in the guarantees were made at a time when the tests should have been but were not conducted and thus related to a past or existing fact rather than future conduct.

Second, a promise made in bad faith without an intention to perform at the time the promise was made may be the basis for a claim of fraud. *Hi-Way Motor Co. v. Int'l. Harvester Co.*, 398 Mich. 330, 337, 247 N.W.2d 813 (1976). The Owyongs' deposition testimony also provides a sufficient factual basis to conclude they had no intention of upholding the guarantees by testing the clothing when the guarantees were signed. Whether these facts can be proven at trial remains to be seen.

$25,000 investment in Drater Trading, Inc., were also not disclosed.[8]

As the Court indicated at oral argument, K Mart has cited no authority for an order restraining a party from removing assets from this country under the circumstances of this case. K Mart is a private party rather than the government. *United States v. First National City Bank*, 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2nd Cir. 1972). No judgment has been entered. *In re Uranium Antitrust Litigation*, 617 F.2d 1248 (7th Cir. 1980). Nor is this a case in which the subject of suit is a *res* whose removal from the country would defeat the jurisdiction of the court. K Mart's complaint seeks monetary damages from Knitjoy; the order it seeks by this motion would simply assist its efforts to execute on any such judgment it may obtain.[9] Exercise of the Court's equity power under these circumstances would be inappropriate. *See De Beers Consolidated Mines v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

Moreover, K Mart has not demonstrated the necessary factual predicate for the order it seeks. In addition to its general and often repeated claims that Knitjoy and the Owyongs have been less than forthcoming in discovery, a fact of little relevance to its motion, Leo Owyong's withdrawal from his personal account at Manufacturers Hanover Trust Company in New York is the only instance cited by K Mart in which Knitjoy or the Owyongs have removed assets from the United States. Speculation that defendants may have or will remove further assets based on this lone transaction is insufficient to justify the injunctive relief requested. Accordingly, K Mart's motion for a preliminary injunction is denied.

## IV.

As discussed in note 6, *supra*, K Mart's motion for leave to file the amended complaint lodged with the Court on May 20, 1982 will be granted. The amended complaint, which will be filed by the clerk, is construed to state claims for breach of contract against Knitjoy and for fraudulent misrepresentation against Knitjoy and the Owyongs.

In its April 21, 1982 letter to the Court (*see* note 1, *supra*), counsel for K Mart proposed that the parties submit cross-motions for summary judgment on the issue of liability once the jurisdictional issues were resolved. If K Mart wishes to move for summary judgment on liability, it may do so at any time; Knitjoy and the Owyongs may of course file a cross-motion for summary judgment if they so desire. A briefing schedule may be obtained by conference call with the Court.

---

**8.** *See* Part II(A)(1) above. K Mart also argues these facts give the Court authority to exercise personal jurisdiction over the Owyongs on the basis that their failure to be forthcoming in discovery regarding jurisdictional facts empowers the court to treat the facts necessary for jurisdiction as established under Fed.R.Civ.P. 37(b)(2). As K Mart notes in a letter to the Court on June 2, 1982, the Supreme Court recently upheld that authority in *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, —— U.S. ——, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

Even if there were no other basis for the exercise of personal jurisdiction over the Owyongs, the lack of candor exhibited by the Owyongs in discovery, while unfortunate, does not approach the flagrant abuse of discovery orders demonstrated in *Bauxite*. Moreover, K Mart has never sought an order compelling discovery under Fed.R.Civ.P. 37(a) once it un-

covered the facts underlying the motion for a preliminary injunction, nor has it otherwise sought to invoke the Court's assistance in solving its discovery problems. There is no basis for an order deeming jurisdiction established under Fed.R.Civ.P. 37(b)(2).

**9.** The Court observes that as a large and supposedly sophisticated purchaser of goods, K Mart should have been aware of the difficulties inherent in attempting to execute on judgments obtained against foreign corporations in the United States. *See* U.S. Department of Commerce, *Foreign Business Practices* (May 1981) at 107. As suggested by the Court at oral argument, K Mart could have obviated much of its concern about enforcing any judgment it may obtain in this case by insisting that Knitjoy post a bond when the contract was entered into.

## V.

For the reasons set forth in this opinion:

(1) the Owyongs' motion to dismiss the complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) is DENIED:

(2) K Mart's motion for a preliminary injunction restraining Knitjoy and the Owyongs from removing assets from the United States is DENIED; and

(3) K Mart's motion for leave to file its amended complaint is GRANTED and subject to the limitations contained in note 6, *supra*, will be filed by the clerk.

SO ORDERED.